FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 19, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NIEVES NEGRETE,<br><br>    Plaintiff,<br><br>    v.<br><br>NORTHWEST COMMUNITIES'<br>EDUCATION CENTER, a nonprofit<br>Washington corporation; and SEA-MAR<br>COMMUNITY HEALTH CENTER, a<br>nonprofit Washington corporation,<br><br>    Defendants. | NO. 1:16-cv-03199-SAB<br><br>**ORDER RE: DEFENDANTS'**<br>**MOTION FOR SUMMARY**<br>**JUDGMENT** |

Before the Court is Defendants' Motion for Summary Judgment, ECF No. 26. The motion was heard without oral argument.

Plaintiff filed this lawsuit against her former employer claiming that Northwest Communities' Education Center ("NCEC") and Sea-Mar Community Health Center ("Sea-Mar") permitted employee Gilbert Alaniz ("Alaniz") to create a hostile work environment based on sex. She also pleads disparate treatment and retaliation relating to a suspension and ultimate termination of her employment in violation of Title VII and the Washington Law Against Discrimination ("WLAD"), Wash. Rev. Code § 49.60.010, et seq. Defendants dispute Plaintiff's claims, arguing that she has not established a prima facie case and Defendants

**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** + 1

established a legitimate, non-discrimination for the adverse employment actions they took. For the reasons stated herein, Defendants' motion is granted in part and denied in part.

**Facts**

NCEC is a community organization in Granger, Washington assisting Spanish-speaking residents in the Yakima Valley. It operates a radio station and partners with other community-based programs to support its mission. In May 2011, NCEC was experiencing financial difficulties which compelled it to consolidate with Sea-Mar. The agreement provided that Sea-Mar would contribute up to $500,000 to NCEC; it contributed substantial financial assistance in the years 2011, 2013, 2015, and 2016. Alaniz became the head of NCEC in 2013 informing employees that "heads were going to roll" if he was not respected. CEO of Sea-Mar Rogelio Riojas ("Riojas") requested that Alaniz accept the position because no one wanted it.

Plaintiff began working at NCEC in 2011 and was an independent contractor from March 2012 through February 2014. Plaintiff became a full-time employee on February 1, 2014 as a "researcher/reporter" and performed administrative work while also producing news reports in English and Spanish for use in newscasts. Her position was funded by a grant from the Knight Foundation, which terminated in March or April of 2015. On January 13, 2015, Alaniz wrote to the Executive Director of the Washington Growers League, asking for assistance in keeping Plaintiff on as an employee. Subsequently, NCEC received a SHIP Grant from the Washington Department of Labor and Industries. Plaintiff was appointed Program Manager in charge of the grant on May 1, 2015.

During her time with NCEC, Plaintiff and Alaniz had several interactions. On two occasions, Alaniz referred to her as "pinche vieja"; he referred to other women as that as well. Pinche vieja is an offensive term for woman. Reportedly, Alaniz also called Plaintiff "la gorda," which she took to mean "fat," and referred

**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** + 2

to another female employee as a horse. Additionally, Alaniz requested that Plaintiff and another female employee explain why they did not bring him tacos or pan dulce. Plaintiff objected to this, telling him that she was neither his woman nor his mother. Alaniz also treated employees poorly at staff meeting and talked negatively about them at work. Plaintiff told her supervisor that she did not appreciate Alaniz's behavior, but nothing was done about it. Plaintiff suggests that this was a pattern of behavior because before Alaniz was hired by NCEC, he worked for OIC of Washington ("OIC"). At OIC, Alaniz had a last-chance employment agreement that prohibited abusive treatment of others, including that based on race or gender. Alaniz was subsequently terminated and OIC was sued for sexual harassment. The company paid $140,000 in settlement, for which Alaniz paid $17,000.

      Throughout her tenure with NCEC, several co-workers complained about Plaintiff's behavior. On August 4, 2015, Alejandra Cruz ("Cruz") submitted a written complaint that Plaintiff had made offensive comments to her, including calling her a "major suck up." In September 2015, NCEC held a fundraiser called Swervin' and Curvin' wherein more concerns about Plaintiff's behavior arose. Chief of Police for the City of Granger, Robert Perales ("Perales") called to speak with Alaniz after the event. Plaintiff answered the phone and accused Perales of complaining about her. He stated that he wished not to be spoken to in an accusatory manner. Subsequently, Perales sent an email to Alaniz stating that he heard Plaintiff treating Juan Ozuna ("Ozuna") and his family disrespectfully stating "well I can't help it if your wife is so insecure." In the same email, Perales informed Alaniz that he had observed that Plaintiff was intoxicated, with slurred speech and slight imbalance. Plaintiff admitted to consuming alcohol and Perales advised her not to drive. On October 26, 2015, Cruz submitted another complaint about Plaintiff, making fun of her language. Another complaint was submitted by

**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** + 3

Roberto Matus ("Matus") who stated that Plaintiff regularly made disparaging comments about Alaniz and behaved unprofessionally.

Michael Leong ("Leong"), Senior Vice President for Corporate and Legal Affairs, was made aware of the complaints against Plaintiff. Alaniz suggested Plaintiff be terminated, but Leong concluded that Plaintiff had acted unprofessionally and discourteously, and suspended her without pay for two days. Around October 2015, Plaintiff discussed filing a discrimination claim about Alaniz with fellow employees. Leong was unaware about Plaintiff's intent to pursue a claim. On November 11, 2015, Alaniz presented Plaintiff with the Reprimand and Suspension, which she did not sign.

The SHIP grant of which Plaintiff was administering concluded on February 29, 2016. Riojas ordered that Plaintiff be presented with a Notice of Termination because "L&I Ship Grant Funding Ends of February 29, 2016" and inform her that would be the last day of employment. She signed the notice. In March and June of 2016, Plaintiff was presented with an EEOC Charge of Discrimination against Defendants, which she signed and returned.

## Summary Judgment Standard

Summary judgment is appropriate if the pleadings, discovery, and affidavits demonstrate there is no genuine issue of material fact *and* that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)). There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). The moving party has the burden of showing the absence of a genuine issue of fact for trial. *Celotex*, 477 U.S. at 325.

When considering a motion for summary judgment, the Court neither weighs evidence nor assesses credibility; instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his

favor." *Anderson*, 477 U.S. at 255. When relevant facts are not in dispute, summary judgment as a matter of law is appropriate, *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999), but "[i]f reasonable minds can reach different conclusions, summary judgment is improper." *Kalmas v. Wagner*, 133 Wn. 2d 210, 215 (1997). In employment discrimination cases, "summary judgment in favor of the employer is seldom appropriate." *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 144 (2004).

## Discussion

### A. Hostile Work Environment

To establish a prima facie hostile work environment claim, a plaintiff must show the four following elements: "(1) the harassment was unwelcome, (2) the harassment was because [plaintiff was a member of a protected class], (3) the harassment affected the terms and conditions of employment, and (4) the harassment is imputable to the employer." *Loeffelholz v. Univ. of Wash.*, 175 Wash.2d 264, 275 (2012) (quoting *Antonius v. King Cty.*, 153 Wash.2d 256, 261 (2004)). "[I]n order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). "The third element is satisfied if the harassment is sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment" to be determined with regard to the totality of the circumstances. *Loeffelholz*, 175 Wash.2d at 275 (internal quotation marks omitted) (citing *Antonious*, 153 Wash.2d at 261). The critical issue is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed. *Oncale v. Sundowner Offshore Servs, Inc.*, 523 U.S. 75, 80 (1998).

**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** + 5

Plaintiff objects to the use of the term pinche vieja and hostility toward female employees in the workplace. Alaniz also asked female employees to bring him food to work. In general, simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of the employees work environment. *Faragher*, 524 U.S. at 788. However, fellow employees testified that this pinche vieja is an extremely offensive term for which a female employee reported she would start crying at work if referred to as it, and a male employee stated he would expected to be slapped. There is evidence in the record that Alaniz expressed a general hostility to the presence of women in the workplace, which can give rise to a hostile work environment claim. *Oncale*, 523 U.S. at 80. However, there is also evidence that Alaniz treated all employees, male and female, with similar hostility. As such, the Court cannot conclude that, as a matter of law, a hostile work environment existed. Because there is a genuine issue of material fact on the issue, Defendant's motion as it relates to Plaintiff's hostile work environment claim is **denied**.

### B. Disability Discrimination (Disparate Treatment)

Where, as here, a plaintiff lacks direct evidence of employment discrimination, "Washington courts use the burden-shifting analysis articulated in *McDonnell Douglas*, 411 U.S. 792 [(1973)] to determine the proper order and nature of proof for summary judgment." *Scrivener v. Clark College*, 181 Wash.2d 439, 445 (2014). Under the first prong of *McDonnell Douglas*, Plaintiff bears the burden of establishing a prima facie case, establishing a presumption of discrimination. *Id.* at 446. A prima facie case can be established where Plaintiff demonstrates that (1) she was of a protected class; (2) she was able to do her job; (3) she was discharged from employment; and (4) was replaced by a man. *Balkenbush v. Ortho Biotech Products, L.P.*, 653 F. Supp. 2d 1115, 1122 (E.D. Wash. 2009). "Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory

**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** + 6

reason for the adverse employment action. *Id.* (citing *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wash.2d 355, 363-64 (1988)). If Defendant meets its burden, the third prong of *McDonnell Douglas* requires Plaintiff to produce sufficient evidence that Defendants' proffered nondiscriminatory reason is pretext for a discriminatory purpose. *Id.*

Plaintiff is unable to establish a prima facie case of disparate treatment because she has not demonstrated that she was replaced by a male. Rather, Riojas stated that after her position was terminated, no other employees have been hired for financial reasons. Indeed, Plaintiff does not provide a rebuttal to Defendants motion on this claim. Accordingly, Defendants' motion for summary judgment, as it relates to Plaintiff's disparate impact claim, is **granted**.

### C. Retaliation

In order to make out a prima facie case of retaliation for opposing an employer's discriminatory practices or for filing a discrimination claim against the employer, Plaintiff must demonstrate that (1) she engaged in a statutorily protected activity; (2) the employer took adverse employment action against her; and (3) there is a causal link between the activity and adverse action. *Milligan v. Thompson*, 110 Wash. App. 628, 638 (2002) (citing *Francom v. Costco Wholesale Corp.*, 98 Wash. App. 845, 862 (2000)). With regard to the prima facie case,

> The first element describes opposition to "any practices forbidden by" RCW 49.60.13. When a person reasonably believes he or she is opposing discriminatory practices, RCW 49.60.210(1) protects that person whether or not the practice is actually discriminatory. A plaintiff proves causation by showing that retaliation was a substantial factor motivating the adverse employment action.

*Currier v. Northland Servs., Inc.*, 182 Wash. App. 733, 743 (2014). Because employers typically do not reveal retaliatory motive, plaintiffs generally must resort to circumstantial evidence. *Id.* at 746. "Proximity in time between the

**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** + 7

protected activity and the discharge, as well as satisfactory work performance and evaluations before the discharge, are both factors suggesting retaliation. *Id.* at 747. Additionally, "if an employee establishes that he or she participated in a statutorily protected opposition activity, the employer knew about the opposition activity, and the employee was then discharged, a rebuttable presumption of retaliation arises that precludes summary dismissal of the case." *Id.* The *McDonnell Douglas* burden-shifting framework applies to retaliation claims.

### i. Reprimand and Suspension

Plaintiff discussed the filing of a complaint for harassment against Alaniz with several co-workers around October 2015. Around that same time, several written complaints about Plaintiff's behavior were presented to Alaniz and later Leong. Plaintiff suggests that one of those complainant's allegations were fabricated by Alaniz in an effort to get her disciplined or fired. Plaintiff presents no evidence for this assertion. As a result of these complaints, Leong concluded that Plaintiff acted unprofessionally and suspended her for two days without pay. Alaniz had recommended termination.

There is no dispute that Plaintiff engaged in a protected activity. However, Plaintiff has not presented evidence to create a genuine issue of material fact that Leong was unaware of any protected activity when he suspended her. Because Leong was unaware of Plaintiff's intent to file a harassment complaint against Alaniz, Plaintiff cannot establish that her suspension was in retaliation for engaging in a protected activity. Her claim is dismissed.

### ii. Termination

With regard to her termination, Riojas stated that he decided to eliminate Plaintiff's position because the SHIP grant had concluded and there was no legitimate business reason for retaining Plaintiff as an employee. Indeed, no replacement employee has been hired. Plaintiff suggests that she was terminated because she filed a charge with the EEOC, but these charges were not filed until

**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** + 8

after her termination became effective. Additionally, Plaintiff argues that she was terminated because Alaniz fabricated a story of her unprofessional behavior at a fundraising event. Her contention is unpersuasive as it is unsupported by the evidence. She also speculates that because NCEC and Sea-Mar were profitable at the time of her termination, she should have retained her employment there. However, in Riojas's business judgment, eliminating Plaintiff's position made the most financial sense; only twenty percent, as Plaintiff claims, of her responsibilities were administrative and could have been translated into another position. Because Plaintiff has not presented evidence sufficient to create a genuine issue of material fact, Defendants' motion as to her retaliation claim is **granted**.

## Conclusion

A genuine issue of material fact exists precluding summary judgment as to Plaintiff's hostile work environment claim; in this respect, Defendant's motion is denied. However, because Plaintiff has presented no evidence sufficient to create an issue of fact as to her disparate treatment and retaliation claims, and Defendants are entitled to judgment as a matter of law, Defendants' motion as to those claims is granted.

//
//
//
//
//
//
//
//
///
//
//

**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** + 9

Accordingly, **IT IS HEREBY ORDERED**:

1. Consistent with this opinion, Defendants' Motion for Summary Judgment, ECF No. 26, is **GRANTED in part, and DENIED in part**.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order and to provide copies to counsel.

**DATED** this 19th day of January 2018.



Stanley A. Bastian
United States District Judge

**ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** + 10